UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMPLOYERS AND OPERATING ENGINEERS LOCAL 520 PENSION FUND, et al. <br><br> Plaintiffs, <br><br> v. <br><br> MONIGER EXCAVATING COMPANY, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:09-CV-219-GPM <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
COUNT I OF THE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

This is an action by fringe benefit funds to enforce the terms of their plans and to collect unpaid liquidated damages owed by defendant based on its failure to submit contractually required fringe benefit contributions when due. This case is governed by the Seventh Circuit Court of Appeals decision in Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corporation, 258 F.3d 645 (7th Cir. 2001).

**FACTS**

Moniger Excavating Company, Inc. ("Moniger") is party to a collective bargaining agreement with Operating Engineers Local 520 ("Local 520"). (Affidavit of David Glastetter, ¶1.) This agreement requires the payment of contributions to the fringe benefits funds jointly administered by Local 520 and the employers' association. (Glastetter Aff., ¶1). The agreement further requires the payment of 10% liquidated damages on contributions which are not submitted when due. (Glastetter Aff., ¶5.)

In addition to the provision in the collective bargaining agreement, the documents

governing the fringe benefit funds also provide for the payment of liquidated damages. Thus, the Pension Fund provides as follows:

> **Section 10.01. Delinquency in Contributions or Reports.**
>
> (a) A contribution report and payment must be submitted by each participating Employer to the Fund Office for each month, by not later than the tenth (10th) day of the following month.
>
> (b) A late penalty equal to 10% of the total contribution due is imposed for each delinquent report and/or monthly contribution payment.
>
> …

(Glastetter Aff., ¶8). Similarly, the Health and Welfare Fund provides that:

> **Contribution Delinquency.**
>
> (A) A contribution report and payment must be submitted by each Contributing Employer to the Fund Office for each month, by not later than the tenth (10th) day of the following month.
>
> (B) A late penalty of 10% is imposed for the delinquent report and/or monthly contribution payments.
>
> …

(Glastetter Aff., ¶11).[1] Likewise, the Annuity Fund states:

> …
> The Trustees shall have the power to enforce, including through suit if advisable, the payment of all contributions due to the Trust by individual Employers. If any individual Employer defaults in the making of such payments, there shall be added to the obligation of the Employer who is in default, liquidation damages at the rate of 10% of the amount due, any auditing expenses, collection costs, attorneys' fees, court costs and other litigation expenses and all other reasonable expenses incurred by the Trustees in connection with such default. This provision shall be in addition to, and not limit, any power to enforce such payments given under any collective bargaining agreement.

---

[1] This provision has been revised but not yet printed. However, the new language will be substantially similar. (Glastetter Aff., ¶12).

2

> In the event there is no provision covering penalties for failure to make required Contributions, or for late payment of Contributions due in the collective bargaining or other agreement under which Contributions are required to be made to the Fund, the Trustees are empowered to provide for reasonable penalties therefore collectible as part of the Contributions due.

(Glastetter Aff., ¶15).

Moniger was delinquent in the submission its contributions for the months of September, October, November and December 2007 and February, March, April, May, July, August, September, October November and December, 2008. (Glastetter Aff., ¶16.) For these months, Moniger submitted its contributions in an untimely manner, and the liquidated damages owed are as follows:

| Month | Date Received | Liquidated Damages Owed |
|---|---|---|
| September 2007 | 1/08/08 | $1,013.00 |
| October 2007 | 1/07/08 | 3,430.79 |
| November 2007 | 2/07/08 | 2,597.79 |
| December 2007 | 2/03/08 | 1,393.83 |
| February 2008 | 4/17/08 | 1,355.42 |
| March 2008 | 5/24/08 | 1,250.06 |
| April 2008 | 6/06/08 | 2,944.60 |
| May 2008 | 6/25/08 | 2,308.60 |
| July 2008 | 10/15/08 | 2,261.96 |
| August 2008 | 11/20/08 | 1,943.30 |
| September 2008 | 11/18/08 | 2,075.83 |
| October 2008 | 12/30/08 | 5,517.76 |
| November 2008 | 1/07/09 | 6,349.70 |
| December 2008 | 2/03/09 | 5,371.46 |
| | | $39,814.10 |

(Glastetter Aff., 16). Moniger has refused to pay those amounts. (Glastetter Aff., ¶17).

## **ARGUMENT**

Section 1132(g)(2) of the Employer Retirement Income Security Act ("ERISA"), 29 U.S.C.§1132(g)(2), provides for, <u>inter alia</u>, the award of liquidated damages where judgment is

3

rendered in favor of a benefit plan. Section 1132(g)(2), however, only applies to contributions which are unpaid at the date of suit. Operating Engineers Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 654, (7th Cir. 2001). Thus, this section does not directly govern the present case, since Moniger's contributions giving rise to the claim for liquidated damages were paid before suit was filed. This, however, does not end the analysis, for Gustafson addresses precisely the fact pattern presented in the instant case — the collection of liquidated damages where the underlying contributions were paid late, but prior to suit being filed. There, in upholding a benefit funds' entitlement to liquidated damages on late-paid contributions which were nonetheless paid before suit, the Seventh Circuit noted the broad discretion given to the Trustees by the plan documents in that case:

> [T]he plans provide that the trustees "shall have full power to construe the provisions of this Agreement, the terms used herein and the by-laws and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon all of the parties hereto and the Beneficiaries hereof. No matter respecting the foregoing or any difference arising thereunder or any matter involved in or arising under this Trust Agreement shall be subject to the grievance or arbitration procedure established in any collective bargaining agreement between the Association and the Union." And, further, "All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof … whether as to the construction of the language or meaning of the by-laws, rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Funds or otherwise, shall be submitted to the Trustees … and the decision of the Trustees … shall be binding upon all persons dealing with the Trust Fund." (This is the language of one plan; the language of the others that appear in the record is similar.) This explicit grant of discretion brings into play the principle of Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000), that explicit grants

4

> of discretion to plan administrators to construe the plan are judicially reviewable only for abuse of discretion, which is to say deferentially.

258 F.3d at 653. In similar fashion, the documents governing the plaintiff Funds provide for such discretion to the Trustees. Thus, the Pension Plan provides that:

> **Section 6.03. Action of Trustees**
>
> (a) The Trustees are given discretionary powers in the interpretation, application, determination and enforcement of the provisions of the Plan.
>
> (b) The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding.
>
> (c) All questions or controversies of whatsoever character arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, as to the construction of the language of this Plan or any rules and regulations adopted by the Trustees, or as to any writing, decision, instrument or account in connection with the operation of the Plan or otherwise, shall be submitted to the Board of Trustees for decision. In the event a claim for benefits has been denied, no lawsuit or other action against the Fund or its Trustees may be filed until the matter has been submitted for review under the ERISA-mandated review procedure set forth in Section 6.04. The decision on review shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matter.

(Glastetter Aff., ¶7). Similarly, the Health and Welfare Plan provides that:

> **Interpretation and Authority**
>
> The determination of the meaning, interpretation and

5

>  application of the provisions of this Plan is the exclusive discretionary prerogative of the Trustees and shall be binding on Employees, Dependents, beneficiaries and all other person unless arbitrary and capricious.

(Glastetter Aff., ¶10).[2]  Likewise, the Annuity Plan provides that:

> **Section 3. Construction of Trust.**
>
> The Board of Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and any Plan adopted hereunder and the terms used herein or in such Plan and any construction adopted by the Trustees in good faith shall be binding upon all parties hereto or concerned herewith, including the Local Unions, the Employees, and the Employers, provide, however, that any construction made, as aforesaid, shall not be in contravention of or inconsistent with any clearly expressed terms or provisions of this Trust Agreement or with existing collective bargaining agreements between the Employers and the Local Unions, or with any requirements of ERISA or other law.

(Glastetter Aff., ¶14).

In Gustafson, the plaintiffs, among other things, sought to assess 20% liquidated damages and interest for contributions which were late, but which were paid prior to the filing of suit.  The Court held that while Section 1132(g)(2) was inapplicable, the liquidated damages and interest could nonetheless be imposed.

> Some of the late contributions the defendant finally paid before the suit was brought, but their lateness violated the terms of the plan, <u>thus entitling the Fund to enforce the Plan's provisions imposing interest and liquidated damages on delinquent contributions</u>.  Since section 1132(g)(2) is inapplicable to these claims, however, they must be adjudicated under common law, but Federal common law, which governs the interpretation of ERISA plans…

258 F.3d at 654-55 (citations omitted, emphasis added).

---

[2] This provision has been revised but not yet printed. However, the new language will be substantially similar. (Glastetter Aff., ¶12).

Gustafson then went on to hold that while 29 U.S.C. §1132(g)(2) was not directly applicable, its language (e.g., the 20% liquidated damage provision) established what was reasonable in a case such as this where the contributions were paid before suit was filed:

> Although it is inapplicable to late contributions made before the suit was filed, ERISA's penalties provision provides guidance to what is a reasonable remedial scheme to incorporate into an ERISA plan and enforce in a suit to enforce the plan.

258 F.3d at 655. The Gustafson court also rejected the district court's finding that the 20% liquidated damage provision was not a reasonable estimate of damages caused by the delay in the payment of contributions, and therefore, was a "penalty" provision. 258 F.3d at 655. The Court held that:

> And while the ban on contractual penalties remains an established principle of the law of contracts, it is antiquated and should not be extended into ERISA land … It is easy to assign non-exploitive reasons for contractual penalties and hard to give convincing reasons why, in the absence of fraud or unconscionability consenting adults that are, moreover, substantially organizations rather than mere consumers should be prohibited.

258 F.3d at 655. Thus, if, under Gustafson, a 20% liquidated damage provision may be applied in a suit to enforce the terms of an ERISA plan even though the contributions were paid prior to suit, then it is manifestly clear that the 10% liquidated damage provision which plaintiffs herein seek to apply is enforceable.

## CONCLUSION

Pursuant to the decision of the Seventh Circuit Court of Appeals in Operating Engineers Local 139 health Benefit Fund v. Gustafson Const. Corp., 258 F.3d 645 (7th Cir. 2001), plaintiffs are entitled to a judgment of $39,814.10 for liquidated damages on fringe benefit contributions which defendant paid late for the months of September, October, November and December, 2007

7

and February, March, April, May, July, August, September, October, November and December, 2008.

                                                Respectfully submitted,

                                                HAMMOND AND SHINNERS, P.C.
                                                7730 Carondelet, Suite 200
                                                St. Louis, Missouri 63105
                                                Phone: (314) 727-1015
                                                Fax:   (314) 727-6804

                                                  /s/ Greg A. Campbell
                                                GREG A. CAMPBELL, #35381

                                                Attorneys for Plaintiffs

<strong><u>CERTIFICATE OF SERVICE</u></strong>

      The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following via operation of the Court's electronic filing system on this 21st day of July, 2009: John Gazzoli, Jr. and Theresa Phelps, 7733 Forsyth Blvd., 4th Floor, St. Louis, MO 63105.

                                                  /s/ Greg A. Campbell